IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

RASHAAN TAYLOR                                                    PETITIONER
ADC #147955


V.                              5:14-cv-00041-BSM-JTK

WENDY KELLEY, Director,                                          RESPONDENT
Arkansas Department of Correction[1]


PROPOSED FINDINGS AND RECOMMENDATIONS INSTRUCTIONS

     The following recommended disposition has been sent to United States District

Court Chief Judge Brian S. Miller.  Any party may serve and file written objections to

this recommendation.  Objections should be specific and should include the factual or

legal basis for the objection.  If the objection is to a factual finding, specifically identify

that finding and the evidence that supports your objection.  An original and one copy of

your objections must be received in the office of the United States District Court Clerk

no later than fourteen (14) days from the date of the findings and recommendations.  The

copy will be furnished to the opposing party.  Failure to file timely objections may result

in waiver of the right to appeal questions of fact.

     If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the

District Judge, you must, at the same time that you file your written objections, include

---

[1]Wendy Kelley replaced Roy Hobbs as Director of the Arkansas Department of Correction. Under Federal
Rule of Civil Procedure 25(d), Wendy Kelley is automatically substituted as Respondent in this action.

the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

Petitioner Rashaan Taylor, an inmate at the Arkansas Department of Correction, filed this timely petition for habeas corpus relief pursuant to 18 U.S.C. § 2254 following a Pulaski County jury finding him guilty of the murder of Odilon Guerrero. (Doc. No. 1.) For the following reasons, the Court recommends the District Court deny Mr. Taylor's petition.

2

I.     FACTS

In late-2007 or early-2008, Little Rock, Arkansas, police officers charged Mr. Taylor with crimes in connection with three incidents. (Doc. No. 10 at 1-2.) The first incident took place on October 27, 2007, where a man robbed and shot Andres Montoya in his home. (*Id.* at 1.) Then, on October 31, 2007, a man robbed, shot, and killed Odilon Guerrero. (*Id.*). Lastly, on November 4, 2007, a man robbed Guadalupe Ortiz, stealing her purse at gunpoint. (*Id.*).

A.     Officers Identify Mr. Taylor as Suspect

On the night of November 4, 2007 ("November 4"), Officer Matt Thompson saw a black Mazda 626 without its headlights on traveling westbound on Baseline Road. (Doc. 5-4 at 3.) As Officer Thompson initiated a traffic stop, the passenger in the back of the vehicle–later identified as Mr. Taylor–exited from the car and fled on foot. (*Id.*). Officer Jonathan Prater pursued Mr. Taylor, who looked back, allowing Officer Prater see Mr. Taylor's face. (*Id.*). Officer Prater chased Mr. Taylor, who ran into a culvert. (*Id.*). Officer Prater did not pursue Mr. Taylor any further because Officer Prater saw that Mr. Taylor had a gun. (*Id.*). Officer Thomas testified that Mr. Taylor was wearing a black jacket and a red undershirt. (*Id.*).

Officers Greg Quiller and Jacob Passman received a call to assist in setting up a perimeter in response to a fleeing subject. (*Id.* at 4.) Officer Quiller testified that he observed a person come out of a culvert and run away. (*Id.*). The person–later identified as Mr. Taylor–dropped a black jacket as he ran away. (*Id.*). Officers Quiller and Passman

chased Mr. Taylor to an Exxon station, where he got in a black Chevrolet Lumina and drove away. (*Id.* at 3-4.) Officer Quiller radioed what happened, and Officer Kendrick Hawkins came around the corner in his vehicle and pursued the suspect. (*Id.* at 4.) Officers Quiller and Passman then retraced their steps and found the black jacket, in which was a semi-automatic chrome handgun. (*Id.*). This handgun was later determined to be the murder weapon used to kill Mr. Guerrero. (*Id.* at 8.)

Officer Hawkins followed the suspect in his car until it stopped in front of a house. (*Id.* at 5.) Officer Hawkins then observed the suspect run behind the house, where Officer Hawkins lost sight of the suspect. (*Id.*). Officer Thomas testified that the Chevrolet Lumina was later recovered at Mr. Taylor's house. (*Id.* at 3.)

Back at the police station, an officer who was not involved in the chase recognized that the house the Lumina stopped at was Mr. Taylor's house. (Doc. No. 10 at 54; Doc. No. 5, Ex. C at 246.) He found Mr. Taylor's picture on "Justice Exchange" and showed it to the officers involved in the chase. All the above-mentioned officers except Officer Thompson said "YEAH!!! That's him! That's the dude we saw bolting from the car, dropping the jacket, jumping in girlies car, then running from the car." (*Id.*). At trial, those officers identified Mr. Taylor as the man who ran from the black Mazda 626 that night. (Doc. No. 5-4 at 3-6.)

### B.   TYEISKA ROBERSON IDENTIFIES MR. TAYLOR

When Officer Thompson initiated the traffic stop, the front driver, Tyeiska

Roberson, and front passenger, Terry Cook, remained in the car. (*Id.* at 3.) Ms. Roberson and Mr. Cook are siblings. (Doc. No. 10 at 8.) After Mr. Taylor ran into the culvert, Officer Thompson and Officer Prater came back to the Mazda. (Doc. No. 5-4 at 3.) In the Mazda, Officer Thompson found a purse and cellphone belonging to Ms. Ortiz. (*Id.*).

At trial, Ms. Roberson testified that she was also charged with capital murder in the death of Mr. Guerrero. (Doc. No. 5-4 at 6.) She testified that on October 27, 2007, Mr. Taylor asked her to take him to make a drug sale. (*Id.*). Mr. Taylor and another man got in her car, and Mr. Taylor told her where to drive. (*Id.*). When he told her to stop outside a house, Mr. Taylor and the other man got out of the car and went to the front porch. (*Id.*). Ms. Roberson's view of the front porch was blocked by a bush. (*Id.*). About five seconds later, Ms. Roberson heard a gunshot. (*Id.*). She then yelled at Mr. Taylor to "come on if he wanted a ride," and Mr. Taylor and the other man returned to the car. (*Id.*). Ms. Roberson did not ask what happened because she did not want to be involved. (*Id.* at 6-7.)

Ms. Roberson testified that on October 31, 2007, she was with Mr. Cook when they picked up Mr. Taylor and asked him for some weed. (*Id.* at 7.) Mr. Taylor responded that he did not have any, but he knew where to get some. (*Id.*). Mr. Taylor told Ms. Roberson to follow a burgundy vehicle, and she followed that vehicle into a mobile home park. (*Id.*). When she stopped the car, Mr. Taylor and Mr. Cook got out of the car and a few seconds later, she heard a gunshot. (*Id.*). Ms. Roberson testified that when Mr. Taylor and Mr. Cook came back to the car, Mr. Taylor put a gun to her head

and told her to drive. (*Id.*). Mr. Taylor told Ms. Roberson not to say anything about it or Mr. Taylor would do something to Ms. Roberson or her family. (*Id.*)

Ms. Roberson testified that on November 4, 2007, she was with Mr. Cook at a gas station. (*Id.*). Mr. Taylor came up to Ms. Roberson and asked her for a ride, which she declined. (*Id.*). Mr. Taylor then lifted up his shirt to show that he had a gun, so Ms. Roberson agreed to give Mr. Taylor a ride because she was afraid. (*Id.*). Mr. Taylor had a black backpack with him, which was later identified as Ms. Ortiz's backpack. (*Id.*). Shortly after Mr. Taylor got into Ms. Roberson's car, police pulled Ms. Roberson over and Mr. Taylor fled. (*Id.*). She gave the police Mr. Taylor's name that night. (*Id.*). Later, at the police station, she explained that she was with Mr. Cook on the night that someone shot Mr. Guerrero and Mr. Cook had the gun for protection because he was afraid of Mr. Taylor. (*Id.* at 7-8.)

### C.    MR. TAYLOR ATTEMPTS TO IMPEACH MS. ROBERSON

At trial, Mr. Taylor attempted to impeach Ms. Roberson multiple times. First, Mr. Taylor claims that Ms. Roberson initially told police that Mr. Cook had the gun on the night that Mr. Guerrero was killed. (Doc. No. 10 at 3.) Ms. Roberson testified that she did initially tell police that Mr. Cook had the gun because Mr. Taylor threatened her. (Doc. No. 5-4 at 8.)

Mr. Taylor also claims that Ms. Roberson was offered a favorable deal in exchange for her testimony, but lied about it at trial. (Doc. No. 10 at 3.) At trial, Mr. Taylor's counsel attempted to ask Ms. Roberson about a letter she wrote to Mr. Taylor

while in prison explaining that the State was going to offer her boot camp in exchange for her testimony against Mr. Taylor. (Doc. No. 5-4 at 8.) Ms. Roberson claimed that she did not write that letter. (*Id.*). Ron Davis, Ms. Roberson's attorney, testified that he was not familiar with the letter. (*Id.*). He also testified that the State had made no offer to Ms. Roberson in exchange for her testimony. (*Id.*).

Trial counsel was also in possession of a letter that makes reference to Ms. Roberson "having taken a charge for her brother." (Doc. No. 5-6 at 4.) Trial counsel did not use this letter in his attempt to impeach Ms. Roberson's credibility. (*Id.*). Ms. Roberson testified at the Rule 37 hearing that the letter was not referring to the charges against her in this case, and that she was not testifying in order to help her brother nor herself. (*Id.*).

### D.   ACTUAL INNOCENCE BASED ON PREEXISTING INJURIES

Mr. Taylor claims that he could not have been the person who ran from the police on the night of November 4, 2007, because he had a broken hip and collapsed lung. (Doc. No. 10 at 15-16.) At trial, Mr. Taylor called Nicole Swopes as a witness to testify about Mr. Taylor's physical condition. (*Id.* at 16.) Ms. Swopes testified that Mr. Taylor was with her, her husband, her children, and Mr. Taylor's children on October 31, 2007. (Doc. No. 5-4 at 9.) She testified that Mr. Taylor was in a car wreck in March 2007, and the wreck was still affecting Mr. Taylor on October 31 because Mr. Taylor could not walk fast. (*Id.*). She testified that their group was out trick-or-treating until about 9:00pm, and then they played dominos until 10:00pm, when she went to bed. (*Id.*). Ms.

Swopes testified that Mr. Taylor was still at her house when she awoke the next morning. (*Id.*).

On the morning of trial, Mr. Taylor's counsel informed the court that he intended to call Ms. Mary Moore to testify about the extent of Mr. Taylor's injuries. (Doc. No. 10 at 15.) Ms. Moore is Mr. Taylor's mother, and she cared for Mr. Taylor while he was injured. (*Id.*). Ms. Moore would have testified that on October 31, 2007, Mr. Taylor was still suffering from the effects of a broken hip and collapsed lung. (*Id.* at 16.) The trial court precluded Ms. Moore from testifying because Mr. Taylor did not include her as a potential witness during discovery. (*Id.*).

At the postconviction hearing, Mr. Taylor introduced testimony from Dr. James Kebler, an expert in orthopedics. (*Id.* at 17.) Dr. Kebler testified that he reviewed Mr. Taylor's medical records and determined with a ninety to ninety-five percent certainty that Mr. Taylor could not have been "physically capable of performing the athletic feats performed by the man who ran from the police on November 4." (*Id.*). Dr. Kebler testified that while someone in severe pain would be able to run through the pain in an effort to run away from the police, Mr. Taylor would have had severe weakness of the muscles surrounding the injury and would not have been able to run. (*Id.* at 18.)

Mr. Taylor claims that trial counsel did nothing with the exculpatory information obtained by Ms. Moore about the severity of Mr. Taylor's injuries. (*Id.* at 17.) Counsel "did not investigate or provide evidence to the jury regarding Taylor's injuries." (*Id.*). Mr. Taylor claims that counsel "admitted at the hearing that there was no strategy

8

involved in this failure to investigate on his part." (*Id.*). Mr. Taylor claims that the evidence of his injuries calls into question the veracity of the police officers' identification of Mr. Taylor since the officers did not pick Mr. Taylor out of a photo array. (*Id.*).

E.   ACTUAL INNOCENCE BASED ON NEWLY DISCOVERED EVIDENCE

Mr. Taylor also claims that there is "newly discovered evidence" that proves he did not commit the crime. (Doc. No. 10 at 40.) Mr. Taylor claims that Ms. Roberson has admitted to multiple inmates that she testified falsely against Mr. Taylor in exchange for leniency from the State. (*Id.*). Mr. Taylor included a copy of a notarized affidavit from one such person, Ms. Kimberly Reed. (*Id.* at 55.) In Ms. Reed's affidavit, she claims that Ms. Roberson and Mr. Cook committed the burglary on Halloween night, and Mr. Cook actually shot Mr. Guerrero. (*Id.*). Ms. Reed claims that Mr. Taylor was not with Ms. Roberson and Mr. Cook that night, and had nothing to do with the murder of Mr. Guerrero. (*Id.*). Ms. Reed does not include information about how she found out about this, but Mr. Taylor claims that Ms. Roberson told Ms. Reed this information. (*Id.* at 40.)

II.   PROCEDURAL HISTORY

On December 4, 2007, Deputy Brent Broshow with the United States Marshals participated in the arrest of Mr. Taylor in Herrin, Illinois. (Doc. No. 5-4 at 5.) Mr. Taylor surrendered himself after the apartment he was in was surrounded by authorities. (*Id.*).

On November 25, 2008, the Pulaski County Circuit Court heard Mr. Taylor's motion to suppress the officers' identification of Mr. Taylor. (Doc. No. 5, Ex. C at 201.)

In the motion to suppress, the court heard testimony from all five officers that identified Mr. Taylor. (*Id.* at 201-250.) The court also heard those officers make in-court identifications of Mr. Taylor. (*Id.* at 265.) Further, the court saw a video taken on the night of November 4 that shows Mr. Taylor's face as he ran from officers. (*Id.* at 257-259.) Based on the evidence at this hearing, the court denied Mr. Taylor's motion to suppress. (*Id.* at 265.)

In April 2009, the Pulaski County Circuit Court held a jury trial on the charges against Mr. Taylor. (Doc. No. 10 at 2.) At that trial, the jury did not reach a unanimous verdict on the charge that Mr. Taylor murdered Mr. Guerrero. (*Id.*). It appears that the court granted a directed verdict to Mr. Taylor, dismissing the charges relating to the November 4 robbery. (*See* Doc. No. 5, Ex. C at 270.) Mr. Taylor claims that he was acquitted of all charges except for the murder of Mr. Guerrero. (Doc. No. 10 at 2.)

On March 2, 2010, the Pulaski County Circuit Court held a jury trial, in which Mr. Taylor was retried for the capital murder of Mr. Guerrero. (Doc. No. 5-4 at 1.) This jury convicted Mr. Taylor of the October 31 murder of Mr. Guerrero. (Doc. No. 5-2 at 5-6.) The court sentenced Mr. Taylor to serve a life sentence without the possibility of parole, with a ten year firearm enhancement running consecutively to the life sentence. (*Id.* at 5.)

On April 6, 2010, Mr. Taylor filed a motion for a new trial on the grounds that Ms. Roberson committed perjury. (Doc. No. 5-4 at 10.) On April 30, 2010, the Pulaski County Circuit Court held a hearing on this motion, where Mr. Taylor presented

evidence that Ms. Roberson did write the note indicating that she had been offered boot camp in exchange for her testimony. (*Id.*). Ms. Roberson testified at the hearing and admitted that she wrote the note. (*Id.*). She claimed that she was confused by defense counsel's question asking whether she wrote the note "to Mr. Taylor" since she did not intend for the note to be read by Mr. Taylor. (*Id.*). She also testified that the note looked like it had been altered, and she did not recognize her handwriting when testifying at trial. (*Id.*). The court denied Mr. Taylor's motion, holding that the jury heard evidence that Mr. Taylor believed Ms. Roberson expected leniency for her testimony, and that Mr. Taylor's counsel made that argument to the jury during his closing argument. (*Id.*).

On April 6, 2010, Mr. Taylor filed a direct appeal to the Arkansas Supreme Court arguing that the evidence was insufficient to support a guilty verdict. (*Id.* at 1.) Mr. Taylor argued that Ms. Roberson's testimony was accomplice testimony, and there was insufficient corroboration from the officers' identification of Mr. Taylor as well as the physical evidence to sustain a guilty verdict. (Doc. No. 5-3 at Arg 4-5.) On January 20, 2011, the Arkansas Supreme Court affirmed Mr. Taylor's conviction. (*Id.*). The court held that even without Ms. Roberson's testimony, the physical evidence and the officers' independent identification of Mr. Taylor established the crime and tended to connect Mr. Taylor with its commission. (Doc. No. 5-4 at 14.)

On April 8, 2011, Mr. Taylor filed a petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37. (Doc. No. 5-5 at 1.) In the petition, Mr. Taylor alleged that his trial counsel was ineffective in his cross-examination of Ms.

Roberson because he asked her if she wrote the letter claiming that the State had offered her boot camp to Petitioner, when in fact she did not. (*Id.* at 3-4.) Mr. Taylor also claimed that trial counsel was ineffective because he did not introduce letters he possessed that Ms. Roberson wrote to Ms. Moore stating that the State coerced Ms. Roberson into testifying against Mr. Taylor in order to protect a family member. (*Id.* at 4-5.) Mr. Taylor claims that had trial counsel been effective in impeaching Ms. Roberson, it would have caused the officers' identification of Mr. Taylor on October 31 and November 4 to be scrutinized further. (*Id.* at 7.) Finally, Mr. Taylor argued that trial counsel was ineffective for failing to introduce Mr. Taylor's medical records, which would have proven that he could not have run from police on November 4. (*Id.* at 9-10.) Had trial counsel been effective, there would have been no evidence to tie Mr. Taylor to the murder weapon used on October 31. (*Id.*). It further would have caused the jury to doubt the officers' identification of Mr. Taylor, which would have left Ms. Roberson's testimony uncorroborated. (*Id.* at 10.)

On December 18, 2011, the Pulaski County Circuit Court denied Mr. Taylor's petition. (Doc. No. 5-6.) It held that had trial counsel done everything Mr. Taylor claims he should have done, there is not a reasonable probability that the jury would have reached a different verdict. (*Id.*). On July 19, 2012, Mr. Taylor appealed the circuit court's decision to the Arkansas Supreme Court. (Doc. No. 5-7 at 1-21.) On April 11, 2013, that court affirmed the decision of the circuit court. (*Id.* at 45.)

On February 6, 2014, Mr. Taylor filed a petition in this Court for a writ of habeas

corpus. (Doc. No. 1.) On April 15, 2014, Respondent filed a response to the petition. (Doc. No. 2.) On July 17, 2014, Mr. Taylor filed a motion to amend his petition. (Doc. No. 7.) On July 25, 2014, the Court granted Mr. Taylor's motion. (Doc. No. 8.) On August 8, 2014, Mr. Taylor filed his amended petition. (Doc. No. 10.) On November 10, 2014, Respondent filed a response to the amended petition. (Doc. No. 12.)

III.     STANDARD OF REVIEW

A district court has jurisdiction to entertain writs of habeas corpus on behalf of people in custody pursuant to state court judgments. 28 U.S.C. § 2254(a) (2006). The only issue the district court may consider is whether a prisoner is in custody "in violation of the Constitution or laws or treaties of the United States." *Id.*

A court may not grant a petition for a writ of habeas corpus unless the applicant exhausts the "remedies available in the courts of the State" prior to filing the petition. *Id.* at (b)(1)(A). A petitioner "must present his federal claims to the state courts in a timely or procedurally correct manner in order to provide the state courts an opportunity to decide the merits of those claims." *Kennedy v. Delo*, 959 F.2d 112, 115 (8th Cir. 1992). Failure to do so will result in his claims being barred "unless [he] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Harris v. Lockhart*, 948 F.2d 450, 452 (8th Cir. 1991) (quoting *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991)).

If a petitioner raises a claim that was fairly presented and adjudicated on the

merits in state court, the federal court can only overturn the state court's decision if it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). A factual determination by the state court is "presumed correct," and a petitioner can only rebut that presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

IV.     ANALYSIS

Mr. Taylor claims that the Court should issue a writ of habeas corpus on the grounds of: (1) ineffective assistance of trial counsel because of trial counsel's ineffective cross-examination of Ms. Roberson; (2) ineffective assistance of trial counsel for failure to produce medical evidence that would show that Mr. Taylor could not have run from the police on November 4; (3) *Brady* violation because the State failed to disclose a "gentlemen's agreement" that it would give Ms. Roberson leniency in exchange for her testimony against Mr. Taylor and arguing to the jury that no such agreement existed; (4) ineffective assistance of trial counsel for failure to raise the issue of a *Brady* violation in a motion for a new trial; (5) denial of due process because the police identification procedure was unconstitutionally suggestive; (6) ineffective assistance of trial and appellate counsel for failing to properly preserve the issue of an improper police identification procedure; and (7) actual innocence based on newly-discovered evidence.

A.     THE ARKANSAS SUPREME COURT PROPERLY DENIED MR. TAYLOR'S

14

### INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM FOR TRIAL COUNSEL'S CROSS-EXAMINATION OF MS. ROBERSON

Mr. Taylor first argues that his trial counsel was ineffective in his cross-examination of Ms. Roberson because (1) trial counsel did not use the letter written to Ms. Moore regarding an offer from the State for boot camp, (2) trial counsel did not use the letter written to Ms. Moore regarding Ms. Roberson "taking a charge" for her brother, and (3) trial counsel did not effectively impeach Ms. Roberson by asking her whether she wrote the letter referring to boot camp "to Mr. Taylor." (Doc. No. 10 at 8-15.) Respondent agrees that these issues were fairly litigated in state court. (Doc. No. 12 at 4.)

To prevail on an ineffective assistance of counsel claim, a petitioner must show that "his counsel's deficient performance prejudiced him." *Porter v. McCollum*, 558 U.S. 30, 38 (2009); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must prove his counsel was deficient by showing that "his counsel's representation fell below an objective standard of reasonableness." *Porter*, 558 U.S. at 38 (quoting *Strickland*, 466 U.S. at 688). The petitioner must then show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 38-39 (quoting *Strickland*, 466 U.S. at 688).

The Arkansas Supreme Court properly analyzed all three of trial counsel's alleged deficiencies under the *Strickland* standard when Mr. Taylor appealed the denial of his Rule 37 post-conviction motion. *Taylor v. State*, 427 S.W.3d 29, 33 (Sup. Ct. Ark.

15

2013). It determined that even if trial counsel was deficient in all three ways, there is not a reasonable probability that the result of the trial would have been different. *Id.* The court held that "[f]our police officers testified that Taylor was the man who fled from them on November 4, 2007, and who dropped a jacket containing the murder weapon." *Id.* Therefore, since Ms. Roberson's testimony "was not the only evidence tying Taylor to the murder and the jury had been made aware of Taylor's arguments impeaching Roberson," Mr. Taylor was unable to prove prejudice. *Id.* This application of *Strickland* is not unreasonable, and Mr. Taylor did not prove by clear and convincing evidence that any factual findings by the state court were incorrect. Therefore, this claim of ineffective assistance of trial counsel should be denied.

      B.     THE SUPREME COURT OF ARKANSAS PROPERLY DENIED MR. TAYLOR'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM FOR TRIAL COUNSEL'S FAILURE TO CALL ADDITIONAL WITNESSES TO TESTIFY ABOUT MR. TAYLOR'S INJURIES

Mr. Taylor argues that trial counsel was ineffective for failing to call Ms. Moore and Dr. Kebler to testify about Mr. Taylor's injuries on the night of November 4. (Doc. No. 10 at 16.) He claims that their testimony would prove that he could not have been the man who dropped the jacket with the murder weapon in it because of the extent of his injuries. (*Id.* at 18.) Mr. Taylor argues that had the jury heard the testimony of Dr. Kebler, it would have proven that Mr. Taylor did not run from the police on November 4, and the jury would not have convicted him. (*Id.* at 21.)

The Arkansas Supreme Court properly analyzed Mr. Taylor's claim under the

*Strickland* standard. *Taylor*, 427 S.W.3d at 33-34. It held that the evidence presented by Ms. Moore and Dr. Kebler would have been cumulative to the evidence presented by Ms. Swopes, and thus Mr. Taylor would be unable to show prejudice. *Id.* at 34. Additionally, the court held that since Dr. Kebler had never examined Taylor, and "based his report only on Taylor's medical records and information given by Taylor's counsel and Moore," there is not a reasonable probability that the outcome of the trial would have been different had Dr. Kebler testified. *Id.* This application of *Strickland* is not unreasonable, and Mr. Taylor did not show by clear and convincing evidence that any factual findings by the state court were incorrect. Therefore, this claim for ineffective assistance of counsel should be denied.

      C.     MR. TAYLOR DOES NOT PRESENT NEWLY DISCOVERED EVIDENCE THAT SATISFIES THE EXTRAODINARILY HIGH STANDARD SET FORTH BY THE SUPREME COURT.

Mr. Taylor's seventh habeas claim is that he is actually innocent, proven by newly discovered evidence. (Doc. No. 10 at 39.) Specifically, he claims that there are three pieces of evidence that shows that he is innocent: (1) that Mr. Taylor could not have run from the police on November 4, (2) that Ms. Roberson testified falsely at trial, and (3) that Ms. Roberson has told other inmates at the jail that she testified falsely at trial. (Doc. No. 10 at 40.) The claim that Mr. Taylor could not have run from police on November 4 appears to be based on the evidence testified to by Ms. Moore and Dr. Kebler. (*Id.*). The claim presented that Ms. Roberson testified falsely at trial appears to be based on the letter that Ms. Roberson testified she did not write at trial. (*Id.*). The

17

third claim appears to be a stand-alone claim of actual innocence. (*See id.*). Respondent only responded to the third claim, arguing that there is no stand-alone claim of actual innocence, and if there was, Mr. Taylor did not meet the standard to prove his claim. (Doc. No. 12 at 21.)

As to Mr. Taylor's claim that he could not run from police on November 4, the testimony of Ms. Moore and Dr. Kebler are not newly discovered because Mr. Taylor knew of the factual basis for the evidence before trial. *Meadows v. Delo*, 99 F.3d 280, 282 (8th Cir. 1996). In fact, the trial judge excluded this exact evidence before trial. Therefore, this evidence is not newly discovered, and should be denied.

Mr. Taylor's claim that Ms. Roberson testified falsely at trial is also not newly discovered evidence. Mr. Taylor knew at trial that Ms. Roberson wrote the letter and that she was testifying falsely at trial. He made those arguments at trial, which the jury was able to take into consideration when determining its verdict. Therefore, this claim also should be denied.

Mr. Taylor's third claim is based on other inmates claiming that Ms. Roberson told them that Ms. Roberson lied at trial. As evidence. Mr. Taylor presents an affidavit from Ms. Kimberly Reed, which essentially states Mr. Taylor's side of what happened. (Doc. No. 10 at 55-56.) The affidavit does not claim that any of the information came from Ms. Roberson, or how Ms. Reed knows Mr. Taylor or Ms. Roberson. (*Id.*).

The Supreme Court has not decided whether to recognize a free-standing claim of actual innocence. *Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014). If it did, it

would be insufficient for a petitioner to show that it is "more likely than not that no reasonable jury would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The "extraordinarily high" standard would be even more difficult to prove. *House v. Bell*, 547 U.S. 518, 555 (2006).

In this case, Mr. Taylor does not present evidence that would meet this "extraordinarily high" standard. Ms. Reed only presents Mr. Taylor's side of the events that occurred on October 31. Therefore, this claim should also be denied.

### D. THE REMAINDER OF MR. TAYLOR'S CLAIMS ARE PROCEDURALLY DEFAULTED

Mr. Taylor claims that the State failed to produce evidence that it offered a favorable deal to Ms. Roberson in exchange for her testimony against Mr. Taylor, in violation of *Brady v. Maryland*, 373 U.S. 82 (1963). (Doc. No. 10 at 20.) He also claims that the identification procedure the police used to identify him as the person who ran from the police on November 4 was unconstitutionally suggestive. (*Id.* at 34.)

Mr. Taylor has not presented the claim that the State committed a *Brady* violation to any state court. Respondent argues that it is procedurally defaulted because Mr. Taylor should have raised the argument in a motion for a new trial or on direct appeal. (Doc. No. 12 at 13.) Mr. Taylor claims that if he should have raised this issue in a motion for a new trial or on direct appeal, then his trial and appellate counsel were ineffective for not raising it. (Doc. No. 10 at 31.) Although the ineffective assistance of counsel claims were not presented to any state court, Mr. Taylor claims that the

19

exception in *Martinez v. Ryan*, 132 S.Ct 1309 (2012), would apply.

A procedural default does not bar a "substantial claim of ineffective assistance of trial counsel if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 1320. A "substantial claim" does not include claims that are without merit or "wholly without factual support." *Id.* at 1319. This exception only applies to ineffective assistance of trial counsel claims, and is not extended to ineffective assistance of appellate counsel claims. *Dansby v. Hobbs*, 766 F.3d 809, 833 (8th Cir. 2014) (petition for cert. filed, No. 14-8782 (Mar. 10, 2015)).

Mr. Taylor did not present his claim that trial counsel was ineffective for not raising the *Brady* violation to the state court for review. As cause for not preserving the claim, Mr. Taylor claims that his collateral counsel was ineffective under *Martinez*. Whether Mr. Taylor's claim is substantial depends upon whether he can prove his ineffective assistance of counsel under *Strickland*. Mr. Taylor failed to prove that trial counsel's failure to bring a *Brady* claim prejudiced Mr. Taylor under *Strickland*'s second prong. The circuit court found that "[t]here was no plea offer [for Ms. Roberson] in existence at the time of [Mr. Taylor's] trial, and [Mr. Taylor's] counsel did in fact make reference to Roberson's hope of plea offer in his closing argument." (Doc. No. 5-6 at 4.) Mr. Taylor does not present clear and convincing evidence that this factual finding is incorrect. Therefore, Mr. Taylor does not allege any *Brady* material that the State failed to disclose to him. Since this claim is without merit, it is not a "substantive claim" under *Martinez*. Because the claim is not substantial, and Mr. Taylor does not advance any

other cause for his procedural default, his claim is procedurally barred and should be denied.

Mr. Taylor's claim that appellate counsel was ineffective for failing to raise a potential *Brady* violation on direct appeal does not fall under the *Martinez* exception and should be denied.

As to Mr. Taylor's claim that the police identification procedure was unconstitutionally suggestive, this issue was fairly raised by trial counsel in his motion to dismiss. Respondent argues that Mr. Taylor failed to raise the issue on direct appeal, so it is not preserved for habeas review. (Doc. No. 12 at 17.) Mr. Taylor claims that the issue was raised on appellate review because the Arkansas Supreme Court automatically reviews the entire case for error under Arkansas Rule of the Supreme Court 4-3(h). (Doc. No. 10 at 37.) Alternatively, he argues that appellate counsel was ineffective for failing to raise the issue on direct review. (*Id.*). Respondent argues that the ineffective assistance of counsel claim was not raised in Mr. Taylor's Rule 37 motion so that issue is not preserved for habeas review. (Doc. No. 12 at 18.) Mr. Taylor argues that if his ineffective assistance of appellate counsel claim is procedurally defaulted, the *Martinez* exception applies. (Doc. No. 10 at 38.)

Although the Arkansas Supreme Court reviews all decisions by the circuit court adverse to the appellant on direct review, a claim is procedurally defaulted for habeas review if it is not fully briefed by the parties. *Williams v. Norris*, 576 F.3d 850, 865 (8th Cir. 2009). Here, Mr. Taylor did not present his claim that the identification procedure

used by the police officers was unconstitutionally suggestive on direct appeal, so this claim is procedurally defaulted. The *Martinez* exception does not apply to claims of ineffective assistance of appellate counsel. Mr. Taylor does not present any other cause of the procedural default. Therefore, Mr. Taylor's ineffective assistance of appellate counsel claim should be denied.

V.      CONCLUSION

Mr. Taylor does not present a claim to which he is entitled relief, and his petition for a writ of habeas corpus (Docs. No. 1, 10) should be denied with prejudice, dismissing this action in its entirety.

IT IS SO ORDERED this 19th day of March, 2015.

_____
United States Magistrate Judge